## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 16-24892-Civ-COOKE/TORRES

*In re Blu Products, Inc. Privacy Breach Litigation*

## CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

Plaintiffs Aaron Bonds and Vincent Aguilar ("Plaintiffs"), individually and on behalf of all others similarly situated, allege the following against Defendants BLU Products, Inc. ("Blu") and Shanghai Adups Technology Co., Ltd. ("Shanghai Adups" or "Adups," and together with Blu, "Defendants").

## SUMMARY OF THE ACTION

1.       This is a privacy case brought on behalf of owners of cellular phones designed, manufactured, marketed, and sold by Blu that contained firmware developed by Shanghai Adups.  The firmware at issue was installed on the following models of Blu smartphones containing Wireless Update versions 5.0.x through 5.3.x: (1) the R1 HD; (2) the Energy X Plus 2; (3) the Studio Touch; (4) the Advance 4.0 L2; (5) the Neo XL; and (6) the Energy Diamond (the "Affected Phones").

2.       Without the knowledge or consent of the owners of the Affected Phones, the Adups firmware continuously captured and transmitted to a server in China the owners' personally identifiable information ("PII"), including text messages, call logs, and details on how the devices were being used.  In so doing, the invasive firmware remotely reprogramed the devices without their owners' knowledge or consent, creating security vulnerabilities. The firmware's continuous activity also served to congest cellular data networks and deplete

the Affected Phones' battery life.  As a result, the phones operated more slowly and needed charging more often than they would have absent the firmware.

3.      Plaintiffs and similarly situated consumers would not have purchased the Affected Phones or would have paid less for them had they known of the phones' concealed, battery-draining software designed and installed for the purpose of extracting their private information and transmitting it to unauthorized parties.  The owners of the Affected Phones were denied the value of what was marketed to them—mobile phones fit for ordinary use that operated in accordance with their hardware and software specifications.  Plaintiffs therefore seek compensatory and injunctive relief for themselves and the other owners of the Affected Phones.

## JURISDICTION AND VENUE

4.      Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over Plaintiffs' claims for violations of the Wiretap Act, 18 U.S.C. § 2511, the Electronic Communications Privacy Act, 18 U.S.C. § 2512, and the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*

5.      The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).

6.      Additionally, the Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one member of the Class is a citizen of a state different from Defendants Blu and Shanghai Adups, the amount in controversy exceeds $5,000,000 exclusive of interest and costs, the Class contains more than 100 members, and none of the exceptions under the subsection applies to this action.

7.     The Court has personal jurisdiction over Blu because its principal place of business is within this District and it has sufficient minimum contacts in Florida to render the exercise of jurisdiction by this Court proper and necessary.

8.     The Court has personal jurisdiction over Adups because it has sufficient minimum contacts in Florida to render the exercise of jurisdiction by this Court proper and necessary.  Adups intentionally avails itself of markets within Florida through the promotion, sale, marketing, and distribution of its products, software, and firmware in this State.

9.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Blu's principal place of business is within this District and a substantial part of the events or omissions that give rise to Plaintiffs' claims occurred in this District.

## PARTIES

10.     Plaintiff Aaron Bonds is a citizen of Alabama who resides in Mobile, Alabama.

11.     Plaintiff Vincent Aguilar is a citizen of California who resides in Hayward, California.

12.     Defendant Blu is a Delaware corporation headquartered in Miami, Florida.

13.     Defendant Shanghai Adups is a Chinese entity based in Shanghai, People's Republic of China.

## FACTS SPECIFIC TO PLAINTIFFS

### A.     Plaintiff Aaron Bonds

14.     On September 30, 2016, Bonds purchased a Blu R1 HD R0030UU cell phone ("Blu R1") from Amazon.com ("Amazon") for $59.99, excluding tax and shipping fees.

3

15.     In addition to using his Blu R1 to place and receive phone calls, Bonds has used it for text messaging.  He has transmitted and received sensitive personal and work-related information via text message on his Blu R1.

16.     Before he purchased the Blu R1, Bonds read all of the promotional material on Amazon's website concerning the device.

17.     None of the promotional material that Bonds read concerning the Blu R1 indicated that the device contained firmware that would intercept, record, and transmit his text messages and other personal information.

18.     On November 15, 2016, Bonds received an e-mail from Amazon announcing "a potential security issue with a BLU smartphone our records indicate you purchased or registered . . . . BLU intends to push out a software update that will fix the issue."

19.     The "potential security issue" referred to the fact that several models of Blu cell phones, including the Blu R1, had continuously intercepted and recorded Blu phone users' private information and transmitted such information to a server located in Shanghai.

20.     At no time did Bonds know of, or consent to, the interception, recording, or transmission of his private information on his cell phone.

21.     Had Bonds been aware that software on the Blu R1 would capture and transmit his private information to an unauthorized party or parties, he would not have purchased a Blu R1 or would have paid less for it.

**B.     Plaintiff Vincent Aguilar**

22.     On September 14, 2016, Aguilar purchased a Blu R1 phone from Amazon for $59.99, excluding tax and shipping fees.

23.     In addition to using the Blu R1 to place and receive phone calls, Aguilar has used it for text messaging.  He has transmitted and received sensitive personal information via text message on his Blu R1.

24.     On November 14, 2016, Aguilar received an e-mail from Amazon announcing "a potential security issue with a BLU smartphone our records indicate you purchased or registered . . . . BLU intends to push out a software update that will fix the issue."

25.     The "potential security issue" referred to the fact that several models of Blu cell phones, including the Blu R1, had continuously intercepted and recorded Blu phone users' private information and transmitted such information to a server located in Shanghai.

26.     At no time did Aguilar know of, or consent to, the interception, recording, or transmission of his private information on his cell phone.

27.     Had Aguilar been aware that software on the Blu R1 would capture and transmit his private information to an unauthorized party or parties, he would not have purchased the Blu R1 phone or would have paid less for it.

## COMMON ALLEGATIONS OF FACT

**A.     Blu's Products and Adups Firmware**

28.     Since it was founded in 2009, Blu has sold more than 35 million mobile devices in over 40 countries.  Blu promotes itself as one of the fastest growing mobile phone manufacturers in the world.

29.     Blu designs, manufactures, and sells mobile phones that operate on the Google Android and Windows operating systems.

30.     Blu markets and sells Blu phones directly to consumers.  Blu phones are also sold through retailer intermediaries like Amazon and Best Buy Co. Inc. ("Best Buy").

31.     The cell phones that Blu sells are relatively inexpensive.  The cost of Blu phones is subsidized by companies that pay to advertise to Blu customers, e.g., through advertisements displayed on Blu phones.

32.     Blu phones can be used on any cellular carrier's network, as long as the network is compatible with the phone's wireless technology.

33.     Shanghai Adups provides professional Firmware Over-The-Air ("FOTA") services and creates software code that runs on hundreds of millions of phones, cars, and other devices worldwide, including the Affected Phones.

34.     Firmware is permanent software installed on a device or system that creates or enhances the ability to control, monitor, and/or manipulate data on the device or system.

35.     Blu incorporates Adups firmware into several models of Blu phones, including the Affected Phones, sold in the United States.

**B.     The Data Breach and Resulting Damage to Consumers**

36.     Typically, when a phone manufacturer updates its firmware, it tells customers what it is doing and whether it will use any personal information.  Here, however, owners of the Affected Phones were not notified that their private information was being disclosed to third parties at or before the time of that disclosure.

37.     The Adups firmware installed on the Affected Phones collected sensitive PII and communications from users' mobile phones and transmitted such data and communications to an Adups server in Shanghai without the knowledge or consent of the users.

6

38.     The user and device information collected by the firmware included, *inter alia*, the full content of text messages, contact lists, call histories with complete telephone numbers, and unique device identifiers.  The Adups firmware also gathered information about users' physical locations, and details of how consumers used their phones and the applications installed on their phones.

39.     Every 72 hours, text messages and call log information were transmitted to an Adups server located in Shanghai.  Other personal information siphoned from the phones was transmitted to Shanghai every 24 hours.

40.     In addition to violating users' privacy, the firmware misappropriated a portion of the data package that consumers purchase from cellular service providers.  This misappropriation of data made it more likely that the user's cellular carrier would impose data overage charges despite ordinary phone usage within the limits of data plans.

41.     The firmware's use of the Affected Phone's resources also reduced the speed at which the Affected Phone could perform other ordinary tasks, such as loading webpages and GPS applications.

42.     As a result of the continuous collection and transmission of PII, the Affected Phones' batteries drained more quickly than they would have absent the firmware.

43.     The operation of the Adups firmware bypassed the detection of mobile antivirus security programs.  These programs assumed that the Adups firmware was not malware because it was contained within the Affected Phones at all times after they were shipped to purchasers.

**C.      The Data Breach Becomes Public**

44.     On November 15, 2016, Kryptowire, a United States security firm, reported that Adups firmware on the Affected Phones was surreptitiously intercepting and transmitting PII.

45.     Prior to that date, Defendants never disclosed the existence of the Adups firmware or the fact that the Affected Phone owners' PII would be (and was being) intercepted, recorded, and transmitted abroad.

46.     Blu admits that at least 120,000 Affected Phones contain the malicious Adups firmware.  Despite this admission, some consumers have reported that they received Blu phones with the relevant Adups firmware as recently as March 2017.

47.     Until November 15, 2016, Blu and Shanghai Adups concealed from Affected Phone owners the existence and operation of this firmware.

48.     Users of the Affected Phones could not reasonably detect the existence, or the data collection and transmission functions, of the Adups firmware.  Moreover, even if they could have detected the existence of the firmware, users of Blu phones could not reasonably delete or disable the Adups firmware or its data collection and transmission functions.

## CLASS ACTION ALLEGATIONS

49.     Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3).

50.     The proposed Class and Subclasses are defined as:

> **Class:**
>
> All persons in the United States who purchased or owned any of the following Blu cell phones—R1 HD, Energy X Plus 2, Studio Touch, Advance 4.0 L2, Neo XL, or Energy Diamond—containing Adups firmware in any version from 5.0.x to 5.3.x.

**California Subclass:**

All persons in the State of California who purchased or owned any of the following Blu cell phones—R1 HD, Energy X Plus 2, Studio Touch, Advance 4.0 L2, Neo XL, or Energy Diamond—containing Adups firmware in any version from 5.0.x to 5.3.x.

Excluded from the proposed Classes are Defendants' officers, directors, legal representatives, successors, and assigns; any entity in which Defendants have a controlling interest; and judicial officers to whom this case is assigned and their immediate family members.

51.     The requirements of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure are met in this case.

52.     **Numerosity**.  The Classes consist of at least 120,000 owners of Affected Phones, making joinder of each Class member impracticable.

53.     **Commonality and Predominance**.  Common questions of law and fact exist with regard to each of the claims and predominate over questions affecting only individual Class members.  Questions common to the Classes include:

(a)     Whether Adups firmware on the Affected Phones surreptitiously intercepted Class members' sensitive personal information, such as text messages, contact lists, and call histories;

(b)     Whether Adups firmware on the Affected Phones surreptitiously transmitted Class members' sensitive personal information, such as text messages, contact lists, and call histories, to an unauthorized party or parties;

(c)     Whether a reasonable person would find it highly offensive that Defendants collected Class members' private text messages and other personal information

and transmitted such information to an unauthorized party or parties without Class members' knowledge or consent;

(d)     Whether Defendants intentionally interfered with Class members' ownership, possession, and/or use of their Affected Phones by causing sensitive personal information to be extracted from their phones and transmitted abroad without their knowledge or consent;

(e)     Whether Defendants' conduct set forth herein violated the Wiretap Act, the Electronic Communications Privacy Act, the Magnuson-Moss Warranty Act, and/or the Song-Beverly Consumer Warranty Act; and

(f)     Whether Class members would have refrained from purchasing the Affected Phones, or purchased them only at lower prices, had Class members been aware of the conduct set forth herein, and whether they were damaged thereby and the measure of such damages.

54.     **Typicality**.  Plaintiffs' claims are typical of the claims of the Class.  Plaintiffs, like all Class members, purchased Affected Phones with firmware that intercepted, recorded, and transmitted their private user information without their knowledge or consent.  Each Class member's claims arise from the same conduct and alleged violations of Defendants.

55.     **Adequacy of Representation**.  Plaintiffs will fairly and adequately protect the interests of the Class.  The interests of Plaintiffs do not conflict with the interests of Class members, and Plaintiffs have retained counsel experienced in prosecuting class action and privacy litigation.

56.     In addition to satisfying the prerequisites of Rule 23(a), Plaintiffs satisfy the requirements for maintaining a class action under Rule 23(b)(3).

57.     **Superiority**.  A class action is superior to individual adjudications of this controversy.  Litigation is not economically feasible for individual Class members because the amount of monetary relief available to individual plaintiffs is insufficient in the absence of the class action procedure.  Separate litigation could yield inconsistent or contradictory judgments, and increase the delay and expense to all parties and the court system.  A class action presents fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

58.     Class certification is also appropriate under Rule 23(b)(2) because Defendants have acted and refused to act on grounds that apply generally to the Class such that final injunctive and/or declaratory relief is warranted with respect to the Class as a whole.

**FIRST CLAIM FOR RELIEF**
**Violations of the Wiretap Act,**
**18 U.S.C. § 2511**
**(On behalf of the Class)**

59.     Plaintiffs incorporate the above allegations by reference.

60.     Defendants, by means of the design, authorship, programming, installation, activation, and other involvement with the Adups firmware on the Affected Phones, intentionally intercepted, endeavored to intercept, and/or procured others to intercept or endeavor to intercept electronic communications, in violation of 18 U.S.C. § 2511(1).

61.     Defendants' intentional interceptions of Plaintiffs' and Class members' electronic communications harmed Plaintiffs and Class members, including by interfering

with their trust and repose in the privacy and security of their personal and confidential communications.

62.     Pursuant to 18 U.S.C. § 2520, Plaintiffs and Class members are entitled to appropriate relief, including damages, equitable or declaratory relief, and reasonable attorney's fees.

## SECOND CLAIM FOR RELIEF
### Violations of the Electronic Communications Privacy Act, 18 U.S.C. § 2512
### (On behalf of the Class)

63.     Plaintiffs incorporate the above allegations by reference.

64.     Defendants intentionally possessed, manufactured, sold, and/or assembled an electronic device knowing, or having reason to know, that the design of the device renders it primarily useful for the purpose of surreptitious interception of electronic communications and that such device or any component thereof has been or will be transported in interstate or foreign commerce.

65.     The Adups firmware pre-installed on the Affected Phones was sent through the mail and/or transported in interstate or foreign commerce.  Such Adups firmware constitutes an electronic device designed to be primarily useful for the purpose of surreptitious interception of electronic communications.  Adups firmware pre-installed on the Affected Phones surreptitiously intercepted text messages and other PII sent electronically via Plaintiffs' and Class members' cell phones.

66.     By means of Defendants' conduct alleged herein, electronic communications of Plaintiffs and Class members were intentionally and surreptitiously intercepted, in violation of 18 U.S.C. § 2512.

12

67.     Defendants' intentional, surreptitious interceptions of Plaintiffs' and Class members' electronic communications harmed Plaintiffs and Class members, including by interfering with their trust and repose in the privacy and security of their personal and confidential communications.

68.     Pursuant to 18 U.S.C. § 2520, Plaintiffs and Class members are entitled to appropriate relief, including damages, equitable or declaratory relief, and reasonable attorney's fees.

**THIRD CLAIM FOR RELIEF**
**Violations of the Magnuson-Moss Warranty Act,**
**15 U.S.C. § 2301, *et seq.***
**(On behalf of the Class)**

69.     Plaintiffs incorporate the above allegations by reference.

70.     The Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, et seq., is a federal consumer protection statute that supplements state warranty law.

71.     Defendants breached the MMWA's implied warranty of merchantability by failing to provide merchantable goods.  The Affected Phones are neither merchantable nor fit for their ordinary purposes because the phones do not satisfy their ordinary purpose of transmitting private, confidential information in a secure manner.

72.     The Adups' firmware installed on the Affected Phones purposely collected private and confidential information—including, *inter alia*, the contents of text messages and personal contact lists—and transmitted such information to unauthorized persons abroad.

73.     The operation of Adups' firmware on the Affected Phones significantly diminished the phones' performance and value, reduced the utility and lifespan of their batteries, and resulted in cellular data wastage.

74.     Plaintiffs and Class members sustained damages, in an amount to be proven at trial, as a direct and proximate result of Defendants' MMWA violations and breaches of the implied warranty of merchantability.

75.     Plaintiffs and Class members seek equitable relief in the form of an order requiring Defendants to conform the Affected Phones to the implied warranties made with respect to them, by requiring cessation of the interception, recording, and transmission of private communications and data as alleged herein.

**FOURTH CLAIM FOR RELIEF**
**Invasion of Privacy (Intrusion upon Seclusion)**
**(On behalf of the Class)**

76.     Plaintiffs incorporate the above allegations by reference.

77.     Defendants intentionally installed, or caused to be installed, Adups firmware on the Affected Phones.

78.     Defendants knew that such Adups firmware would, and did, collect and transmit Plaintiffs' and Class members' confidential text messages and other personal information without their knowledge or consent.

79.     By intentionally installing, or causing to be installed, Adups firmware on the Affected Phones, Defendants unlawfully intruded upon Plaintiffs' and Class members' seclusion and interfered with their trust and repose in the security of their private facts and communications.

80.     A reasonable person would find it highly offensive that Defendants collected Plaintiffs' and Class members' confidential text messages and other personal information and transmitted such information to unauthorized parties without Plaintiffs' and Class members' knowledge or consent.

81.     Plaintiffs' and Class members' reasonable interest in privacy was vitiated as a direct and proximate result of Defendants' intentional invasions set forth above.

## FIFTH CLAIM FOR RELIEF
### Trespass to Chattels
### (On behalf of the Class)

82.     Plaintiffs incorporate the above allegations by reference.

83.     Plaintiffs and Class members owned, possessed, and had a right to possess their Affected Phones.

84.     Without authorization, Defendants intentionally interfered with Plaintiffs' and Class members' ownership, possession, and/or use of their Affected Phones by causing sensitive personal information to be extracted from their phones and sent to servers in China.

85.     Defendants' unauthorized and intentional interference with Plaintiffs' and Class members' ownership, possession, and/or use of their Affected Phones caused damage to Plaintiffs and Class members, including by diminishing the phones' value and impairing their performance.

86.     A reasonable person would be willing to pay substantially less for a cell phone upon knowing that it contained irremovable firmware that would collect and transmit to an unauthorized party or parties private communications sent from and received by that phone.

87.     Plaintiffs and Class members are entitled to recover the full amount by which the Adups firmware harmed their possessory interest in, and reduced the value of, the Affected Phones.

## SIXTH CLAIM FOR RELIEF
### Breach of Implied Warranty
### (On behalf of the Class)

88.     Plaintiffs incorporate the above allegations by reference.

89.     By operation of law, Defendants impliedly warranted to Plaintiffs and Class members that the Affected Phones they purchased were of merchantable quality and fit for their ordinary and intended use as cellular telephone devices.

90.     Plaintiff and Class members either bought Affected Phones directly from Defendants or are the intended third-party beneficiaries of written agreements between Defendants and its authorized retailers, and of the implied warranties that attach to those contracts.

91.     Plaintiffs and Class members purchased the Affected Phones in reliance on Defendants' delivery of a product that functioned in conformance with their reasonable expectations.  Plaintiffs and Class members reasonably expected that their personal communications and other personal information contained on their cell phones would not be extracted from the phones and sent to unauthorized third parties.

92.     Defendants breached the implied warranty of merchantability when it distributed and sold the Affected Phones.  At the point of sale, the Affected Phones contained Adups firmware that surreptitiously intercepted Class members' sensitive personal information, such as text messages, contact lists, and call histories.  The firmware rendered the Affected Phones unfit for their ordinary purpose of confidentially transmitting private information to the intended recipient.  The firmware operated at the Plaintiffs' and Class members' expense by appropriating cellular data and depleting the battery life of the Affected Phones.

93.     The Affected Phones were not altered by Plaintiffs or Class members.  The Adups firmware was installed on the Affected Phones when they left Blu's possession.

94.     Had Plaintiffs and Class members known that the Affected Phones contained firmware that would collect their private information and transmit it to an unauthorized party or parties, they would not have purchased the Affected Phones.

95.     As a direct and proximate result of Defendants' breach of implied warranties, Plaintiffs and Class members have sustained damages in an amount to be determined at trial.

## SEVENTH CLAIM FOR RELIEF
### Breach of Implied Warranty in Violation of the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1792, *et seq.*
### (On behalf of the California Subclass)

96.     Plaintiff Aguilar incorporates the above allegations by reference.

97.     Under the Song-Beverly Consumer Warranty Act, Civ. Code § 1792, et seq., every sale of consumer goods in California is accompanied by a manufacturer's "implied warranty that the goods are merchantable."

98.     Defendants are "manufacturers" under Civil Code section 1791(j).

99.     The Affected Phones are "consumer goods" under Civil Code section 1791(a).

100.    Defendants impliedly warranted to Aguilar and the California Subclass members that the Affected Phones were "merchantable" under Civil Code sections 1791.1(a) and 1792.

101.    Defendants breached this implied warranty by selling the Affected Phones that were not of merchantable quality and were not fit for the ordinary purposes for which cell phones are used.

17

102.    The Affected Phones are not of merchantable quality because the phones do not satisfy their ordinary purpose of transmitting private, confidential information in a secure manner.

103.    Aguilar and California Subclass members can enforce this statutory implied warranty regardless of whether or not they are in privity with Defendants.  California Civil Code section 1792 provides that "[u]nless disclaimed in the manner prescribed by this chapter, every sale of consumer goods that are sold at retail in this state shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable."   California Civil Code section 1792 thus does not require privity of contract to enforce the implied warranty established by the statute.   Additionally, Aguilar and California Subclass members can enforce this statutory implied warranty because they either bought the Affected Phones directly from Blu or are the intended third-party beneficiaries of written agreements between Defendants and its authorized retailers, and of the implied warranties that attach to those contracts.

104.    As a direct and proximate result of Defendants' breaches of the Song-Beverly Consumer Warranty Act, Aguilar and California Subclass members have been damaged in an amount to be proven at trial.

**EIGHTH CLAIM FOR RELIEF**
**Violation of the California Unfair Competition Law,**
**Cal. Bus. & Prof. Code § 17200,** *et seq.*
**(On behalf of the California Subclass)**

105.    Plaintiff Aguilar incorporates the above allegations by reference.

106.    California Business and Professions Code § 17200 prohibits any "unlawful, unfair, or fraudulent business act or practices."

107.    Defendants' acts, omissions, and practices are unlawful because they constituted an invasion of privacy, trespass to chattels, and violated the Wiretap Act, the Electronic Communications Privacy Act, the Magnuson-Moss Warranty Act, and the Song-Beverly Consumer Warranty Act.

108.    Defendants' conduct is unfair in that Defendants violated Aguilar and California Subclass members' constitutional right to privacy as defined in the California Constitution, Article 1, Section 1.  A reasonable consumer would be highly offended by undisclosed software on a cell phone tracking and exfiltrating communications and other sensitive personal information to a server in China.

109.    Defendants acted unscrupulously in a manner that is substantially injurious to consumers.  Among other violations, Defendants:

(a) failed to apply reasonable care in testing the Affected Phones for malicious firmware prior to sale;

(b) marketed and sold the Affected Phones with actual or constructive knowledge that the Affected Phones contained firmware designed to surreptitiously intercept confidential electronic communications; and

(c) marketed and sold the Affected Phones with actual or constructive knowledge that the Affected Phones contained firmware that depleted the phone's battery life and consumed cellular data at excessive rates.

110.    Defendants' acts and practices are contrary to California law and policy and constitute unreasonable and oppressive business practices that caused substantial injury to Aguilar and California Subclass members.

111.    The gravity of the harm resulting from Defendants' conduct outweighs any potential utility.  There are reasonably available alternatives that would further Defendants' legitimate business interests, such as equipping Blu phones with firmware that does not surreptitiously collect and transmit electronic communications.

112.    Aguilar and California Subclass members could not have reasonably avoided injury from Defendants' unfair and unscrupulous trade practices.  Aguilar and California Subclass members did not know, and had no reasonable means of discovering, that the Affected Phone contained firmware that surreptitiously collected and transmitted their personal communications to a third party abroad.

113.    All of Defendants' unlawful and unfair conduct occurred in the course of Defendants' business and was part of a generalized course of conduct.

114.    As a direct and proximate result of Defendants' conduct, Aguilar and California Subclass members have suffered injury in fact and lost money or property, including by overpaying for the Affected Phones, being deprived of essential cellular phone service, and suffering a depletion of battery life.

115.    Aguilar and California Subclass members accordingly are entitled to appropriate relief, including restitution, declaratory relief, a permanent injunction prohibiting Defendants from engaging in the above practices that violate the UCL, and reasonable attorneys' fees pursuant to Cal. Civ. Code § 1021.5.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Classes defined above, respectfully request that this Court:

(a)     Certify this case as a class action under Federal Rule of Civil Procedure 23, appoint Plaintiffs as the Class representatives, and appoint the undersigned as Class counsel;

(b)     Order appropriate relief to Plaintiffs and the Class, including statutory damages;

(c)     Enter injunctive and declaratory relief as appropriate under the applicable law;

(d)     Award Plaintiffs and the Class pre-judgment and/or post-judgment interest as prescribed by law;

(e)     Award reasonable attorneys' fees and costs as permitted by law; and

(f)     Enter such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on all issues so triable.


DATED: May 12, 2017                    **GIBBS LAW GROUP**

                                       /s/ *Amy Zeman*

                                       Amy Zeman
                                       Florida Bar No. 110653
                                       3711 Sheridan Avenue
                                       Miami Beach, FL 33140
                                       Telephone: (510) 350-9721
                                       Facsimile: (510) 350-9701
                                       amz@classlawgroup.com

                                       **GIRARD GIBBS LLP**
                                       Daniel C. Girard, admitted *pro hac vice*
                                       Jordan Elias (*pro hac vice* forthcoming)
                                       Simon S. Grille, admitted *pro hac vice*
                                       601 California Street, 14th Floor
                                       San Francisco, CA 94108
                                       Telephone: (415) 981-4800
                                       Facsimile: (415) 981-4846

21

dcg@girardgibbs.com
je@giardgibbs.com
sg@girardgibbs.com

*Attorneys for Plaintiff Aaron Bonds*

**THE WILNER FIRM**
Norwood S. Wilner
Richard J. Lantinberg
444 East Duval St., 2nd Floor
Jacksonville, FL 32202
Tel.:  (904) 446-9817
Fax:  (904) 446-9825
nwilner@wilnerfirm.com
rlantinberg@wilnerfirm.com

**LEVI & KORSINSKY LLP**
Rosemary M. Rivas (*pro hac vice* forthcoming)
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Tel: (415) 291-2420
Fax: (415) 484-1294
rrivas@zlk.com

**LEVI & KORSINSKY LLP**
Courtney E. Maccarone (*pro hac vice* forthcoming)
30 Broad Street, 24th Floor
New York, New York 10004
Tel.: (212) 363-7500
Fax: (212) 363-7171
cmaccarone@zlk.com

**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP**
Janine L. Pollack, admitted *pro hac vice*
Correy A. Kamin (*pro hac vice* forthcoming)
270 Madison Avenue
New York, NY 10016
Tel.:  (212) 545-4600
Fax:  (212) 686-0114
pollack@whafh.com
kamin@whafh.com

*Attorneys for Plaintiff Vincent Aguilar*